UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

        Plaintiff,                    CASE NO. 2:23-cr-20583

                                      Hon. Jonathan J.C. Grey

v.

Ivan Blas-Martinez

        Defendant.

---

### United States's Sentencing Memorandum

---

NOW COMES the United States by and through Counsel with its sentencing memorandum, in connection with the sentencing of defendant, Ivan Blas-Martinez, which hearing is scheduled for Tuesday, November 18, 2025, at 3:00 p.m.

**United States's Memorandum in Support**

## I. Background

On September 27, 2023, a tractor trailer containing a shipment of plastic bags applied for admission into the United States from Mexico through the World Trade Bridge, Port of Entry (POE) in Laredo, TX. *See* 2025 Presentence Investigation Report ("PSR") at ¶ 13. During the secondary inspection of the trailer "a bundle containing a white powdery substance that tested positive for the properties of cocaine" was discovered. *Id.* at ¶ 14. The trailer was continuously surveilled by law enforcement from Texas to a warehouse in Wixom, Michigan. *Id.* at ¶ 16. On October 1, 2023, the defendant, Blas-Martinez, along with his two co-defendants, arrived at the Wixom warehouse after traveling from the state of Indiana. Thereafter, the co-defendants transferred "223 bricks of cocaine, each weighing one kilogram" from the bed of the trailer to the warehouse. *Id.* at ¶ 21. Federal agents subsequently learned that Blas-Martinez is not a United States citizen; however, he is legally present in the United States as a lawful permanent resident ("LPR"), possessing a valid Permanent Resident Card (Form I-551).

**II.     Argument**

*A. Nature and Circumstances of the offense characteristics of the defendant.*

The nature and circumstances of Blas-Martinez's offense are extremely serious. Cocaine trafficking in Michigan is of particular concern, with major operations run by large-scale Mexican Drug Trafficking Organizations (DTOs), particularly the Sinaloa and Jalisco New Generation Cartels. Detroit serves as a primary distribution hub, with illicit drugs entering the state via various routes and transport methods. Most cocaine is transported into Michigan from the U.S. Southwest Border states (like Arizona, California, and Texas) and Chicago. Major interstates such as I-75, I-94, and I-69 are key trafficking corridors. Couriers often use private and commercial vehicles, sometimes equipped with sophisticated hidden compartments, or use mail/parcel services to evade detection. In the instant matter, a far more sophisticated method than hidden compartments ("traps") within an automobile was utilized – "Blas-Martinez . . . stated that he was the lessee of . . . the warehouse where the cocaine was delivered." *Id.* at ¶ 17. The leasing of a warehouse is indicative of a DTO engaged in long-term planning and consistent distribution within the Eastern District of Michigan. Blas-Martinez additionally revealed during his post-arrest *Mirandized* statement that he and his co-defendant father previously delivered a cocaine shipment "three-weeks ago at the same [Wixom] warehouse . . ."

4



Detroit is the largest drug market in the eastern part of the state, functioning as a primary distribution center.

Additionally, the shared border with Canada, connected by the Ambassador Bridge and the Detroit-Windsor Tunnel, is a crucial transit point. Cocaine and bulk currency (proceeds from drug sales in the U.S.) are often transported through Detroit into Canada.

5



The subsequent federal investigation revealed that Blas-Martinez coordinated his 223-kilogram cocaine shipment with a family member who is a charged defendant in a nine-count drug conspiracy indictment issued in the Northern District of Illinois. That relative is the leader of an international DTO, which imports cocaine into the United

6

States from Mexico. Mexican DTOs are the main suppliers of wholesale quantities of cocaine, coordinating with street gangs, criminal groups, and independent dealers for local distribution. For instance, in fiscal year 2025, U.S. Customs and Border Protection Field Operations seized more than 1,500 pounds of cocaine at Michigan ports of entry, including a single 339-pound seizure in Detroit in April 2025.

*To reflect the seriousness of the offense, promote respect for the law, and provide just punishment.*

The gravity of this international drug trafficking conspiracy, involving cocaine quantities of this enormity, is self-evident. The statutory maximum of life, as well as the applicable guidelines range of 151 months to 188 months, reinforces this understanding. A custodial sentence at the bottom of the guidelines range would reflect the seriousness of the offense, promote respect for the law, and provide a just punishment.

B. *Adequate Deterrence.*

"Transnational drug distribution is an epidemic in this country." PSR at ¶ 87. A lawful permanent resident convicted of a serious drug offense, such as the instant offense, is very likely to be ordered removed from the country. *See* INA § 237 (8 U.S.C. § 1227). U.S. immigration law classifies most drug-related offenses as deportable, and serious crimes, especially those involving trafficking or large quantities, both of which are applicable in this case, can lead to automatic deportation. *See* INA § 101(a)(43) (8 U.S.C. § 1101(a)(43)). Following any confinement period the defendant is likely to have

7

his LPR status revoked and, thereafter, removed from the United States. Consequently, both specific and general deterrence are likely to be achieved in this case.

### III.  Conclusion

For the reasons identified above, the government recommends a custodial sentence, and the author has not been authorized to recommend a downward variance.

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

s/ *C. Barrington Wilkins*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone: (313) 226-9621
E-Mail: barrington.wilkins@usdoj.gov

Dated: Friday, November 14, 2025

## Certificate of Service

I certify that on Friday, November 14, 2025, I electronically filed the foregoing Response and Brief in Support with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Mr. Jean Pierre Nogues, III, *Esq.*

s/ *C. Barrington Wilkins*
C. Barrington Wilkins
Assistant U.S. Attorney
United States Attorney's Office

9